UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHANE BUCHANS, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CEB, INC., THOMAS L. MONAHAN, III, )<br>GREGOR S. BAILAR, STEPHEN M. )<br>CARTER, GORDON J. COBURN, )<br>KATHLEEN A. CORBET, L. KEVIN COX, )<br>DANIEL O. LEEMON, STACEY S. RAUCH, )<br>JEFFREY R. TARR, and GARTNER, INC. )<br>)<br>Defendants. )<br>) | C.A. No. 1:17cv263  (TSE/JFA)<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR BREACH OF
FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS
14(a) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Shane BuChans ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.  Plaintiff brings this action on behalf of himself and the public stockholders of CEB, Inc. ("CEB" or the "Company") against CEB's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for breaches of fiduciary duties, and their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.  On January 5, 2017, Gartner, Inc. ("Parent" or "Gartner") and the Company announced that they had entered into a definitive agreement that same day ("Merger Agreement") under which Gartner will acquire all of the outstanding shares of CEB in a cash and stock

1

transaction (the "Proposed Transaction").  If consummated, CEB stockholders will receive $54.00 in cash and 0.2284 shares of Gartner stock for each share of CEB stock that they own ("Exchange Ratio").  CEB stockholders will control approximately 9% of the combined company.  The Proposed Transaction was valued at approximately $2.6 billion at the time of the announcement.

3. On February 6, 2017, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial

portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of CEB common stock.

9. CEB is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 1919 North Lynn Street, Arlington, Virginia, 22209. CEB's common stock is traded on the New York Stock Exchange under the ticker symbol "CEB."

10. Defendant Thomas L. Monahan, III ("Monahan") is the Chairman of the Board, the Chief Executive Officer, and a director of the Company. Defendant Monahan has served as a director since 2001, and announced his impending resignation on August 31, 2016.

11. Defendant Gregor S. Bailar ("Bailar") has been a director of the Company since 2007.

12. Defendant Stephen M. Carter ("Carter") has served as a director of the Company since 2007.

13. Defendant Gordon J. Coburn ("Coburn") has served as a director of the Company since 2007.

14. Defendant Kathleen A. Corbet ("Corbet") has been a director of the Company since 2016.

15. Defendant L. Kevin Cox ("Cox") has been a director of the Company since 2010.

16. Defendant Daniel O. Leemon ("Leemon") has served as a director of the Company since 2003 and is the Company's lead independent director.

17. Defendant Stacey S. Rauch ("Rauch") has been a director since 2014.

18. Defendant Jeffrey R. Tarr ("Tarr") has been a director since 2010.

19. Defendants Monahan, Bailar, Carter, Coburn, Corbet, Cox, Leemon, Rauch, and Tarr are collectively referred to as Individual Defendants and/or the Board.

20. Defendant Gartner is a Delaware corporation with its corporate headquarters located in Stamford, Connecticut.

21. Non-party Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Gartner.

## CLASS ACTION ALLEGATIONS

22. For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of CEB stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

23. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

24. The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of October 28, 2016, CEB had 32,228,207 shares of common stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

25. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

4

    a.    whether the Defendants have negligently, recklessly, knowingly or intentionally misrepresented or omitted material facts in the Proxy;

    b.    whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction;

    c.    whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated without corrective disclosures; and

    d.    if the Proposed Transaction is consummated without corrective disclosures curing the misrepresentations and omissions complained of here, what measure of damages Plaintiff and the Class are entitled to.

26.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

27.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

28.    The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

29.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

30. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

31. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background and Potential for Growth**

32. CEB consults leading companies and organizations throughout the world in best practices for corporate performance and innovative solutions. The Company provides services to almost 90% of the Fortune 500 and FTSE 100, 80% of the JSE, and more than 70% of the Dow Jones Asian Titans.

33. On August 31, 2016, the Company announced that Defendant Monahan intended to step down from his role as Chairman and CEO in June 2017. The Company engaged a search firm to assist in its search for Defendant Monahan's successor.

34. Following this announcement, the Company began receiving inquiries as to possible strategic transactions from interested third parties, including Gartner.

**The Sale Process**

35. Gartner's courting of CEB began in September 2016. On September 29, 2016, Mr. Eugene Hall, Gartner's CEO, contacted Defendant Monahan to suggest the possibility of a potential strategic transaction.

36. CEB's board considered indications of interest from Gartner of increasing value over the next several months. In evaluating these proposals, the Board engaged Centerview Partners LLC ("Centerview") to perform financial analyses and offer its advice. During this

6

process, the Company entered into a non-disclosure agreement with Gartner to accommodate Gartner's due diligence review of CEB.

37. On December 7, 2016, Gartner provided its final indication of interest, with cash consideration of $54.00 per share and stock consideration of 0.2284 shares of Gartner common stock. At the time of this bid, it represented a total implied price of $77.00 per share.

38. The Board declined to seek out other potential interest during the negotiations with Gartner, citing concerns about the effect of a potential leak on its employees' performance and engagement.

39. After considering the December 7, 2016 bid, the Board agreed to negotiate a merger agreement with Gartner. The two parties negotiated an agreement over the next month, including a 35-day go-shop period following the signing of a merger agreement.

40. On January 4, 2017, the Board met again to consider the latest revisions to the merger agreement. After Centerview provided its oral opinion as to the fairness of the transaction, the CEB board unanimously agreed to adopt and approve the Merger Agreement.

41. Following the adoption of the Merger Agreement, the Board agreed to retain Allen & Company, LLC ("Allen") to solicit potential third-party bidders during the go-shop period. The Company had worked with Allen previously and believed the advisor knew its industry well.

42. Early in the morning of January 5, 2017, Gartner and CEB executed the definitive merger agreement. The two companies issued a joint press release announcing the transaction before the financial markets opened later that morning.

43. The press release read, in part, as follows:

> STAMFORD, Conn. and ARLINGTON, Va. — January 5, 2017 — Gartner, Inc. (NYSE: IT), the world's leading information technology research and advisory company, and CEB Inc. (NYSE: CEB), the industry leader in providing best practice and talent management insights, today announced that

they have entered into a definitive agreement whereby Gartner will acquire all of the outstanding shares of CEB in a cash and stock transaction valued at approximately $2.6 billion. The transaction has a total enterprise value of approximately $3.3 billion, including Gartner's assumption of approximately $0.7 billion in CEB net debt. The transaction is immediately accretive to Gartner's adjusted EPS and is expected to be double-digit percentage accretive in 2018. The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the first half of 2017.

Under the terms of the agreement, CEB shareholders will receive $54.00 in cash and 0.2284 shares of Gartner common stock for each share of CEB common stock they own, implying 70% cash and 30% stock consideration for the offer. The total $77.25 per share consideration represents a premium of approximately 31% compared to the volume weighted average closing stock price of CEB over the past 30 days, approximately 41% compared to the volume weighted average closing stock price of CEB over the past 60 days, and approximately 25% compared to CEB's closing stock price on January 4, 2017, the last trading day prior to today's announcement. Upon completion of the transaction, Gartner shareholders will own approximately 91% of the combined company and CEB shareholders will own approximately 9%. In addition to issuing Gartner shares, the transaction will be funded through a combination of Gartner cash, capacity under its existing credit facility and new additional debt financing.

The addition of CEB further enhances Gartner's ability to deliver tremendous value to its clients and help them make the right decisions with confidence. Gartner's analyst-driven, syndicated research and advisory services in Information Technology (IT), Marketing and Supply Chain, combined with CEB's best practice and talent management insights across a range of business functions, including Human Resources (HR), Sales, Finance and Legal, will provide a comprehensive and differentiated suite of advisory services aligned to the mission-critical priorities of virtually all functional business leaders across every industry and size of enterprise worldwide.

On a pro forma basis, the combined company's reported results for the last 12 months ended September 30, 2016 include approximately $3.3 billion in revenue, $693 million in adjusted earnings before interest, taxes depreciation and amortization (EBITDA), and $463 million in free cash flow. Together, Gartner and CEB will employ more than 13,000 associates serving clients in more than 100 countries worldwide.

"We are excited about joining forces with CEB, a world-class company we have long admired. Our highly complementary business models will create the leading global research and advisory company for all major functions in the enterprise," said Gene Hall, chief executive officer of Gartner. "We look forward to working with CEB's highly talented teams to leverage our global reach and apply Gartner's proven operational and sales execution capabilities

at scale to accelerate growth across CEB's businesses. We will also introduce Gartner's existing syndicated research and advisory services to CEB's clients in a broad range of functional areas that extend beyond our existing IT, Marketing and Supply Chain roles. Similarly, we will introduce CEB's best practice and talent management insights to Gartner clients worldwide."

"We expect this acquisition to create value for our shareholders in both the near and long-term, including immediate accretion on an adjusted EPS basis," added Mr. Hall. "Associates will benefit from expanded career opportunities as part of a larger, strong organization with the most extensive client offering in the industry. We remain focused on delivering tremendous value to our clients, capturing our vast market opportunity and continuing our trend of driving consistent double-digit growth in revenue, earnings and free cash flow."

Tom Monahan, chairman and chief executive officer of CEB, said, "We have long admired Gartner for its impact on clients and track record of growth. We're pleased to reach this agreement, which offers compelling benefits to CEB shareholders, clients and employees. CEB shareholders will receive substantial and immediate value for their investment while benefitting from the upside and strong growth prospects of the combined company. The combined company will have unmatched insight into technology, talent and the other drivers of corporate performance. It will also have deep reach into a massive, immediately addressable market with clear need for our support across a range of functional areas. CEB employees will benefit from being part of a diversified and growing global organization with enhanced opportunities for career growth and development. We look forward to working with the Gartner team to accelerate our growth and scale our impact on members and clients."

Mr. Hall concluded, "Gartner and CEB are well-aligned from a culture, talent and business model perspective, which will support a seamless integration following close. We look forward to welcoming CEB to our team as we work to realize the benefits of this compelling combination for all our clients, shareholders and associates around the world."

44. On February 10, 2017, the Company issued a press release stating the results of the go-shop period. CEB solicited 54 corporate parties and 23 financial sponsors. One party negotiated and entered into a confidentiality agreement with CEB, but did not submit an alternative acquisition proposal.

**The Registration Statement Misrepresents and Omits Material Information**

45. On February 6, 2017, Gartner and CEB filed the Proxy, a materially incomplete Form S-4 Registration Statement, with the SEC. Designed to convince shareholders to vote in

9

favor of the Proposed Transaction, the Proxy fails to provide Company shareholders with critical information concerning the opinions and analyses of Centerview, the conflicts of interest potentially faced by the Company's financial advisors, and critical information concerning the Company's expected future value as a standalone entity as reflected in the Company's financial projections.

46. The Proxy fails to disclose material information concerning the Company's financial projections. First, the Proxy discloses two non-GAAP accounting metrics for projected financial information over the years 2017-2021: Adjusted EBITDA and Unlevered Free Cash Flow. However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, renders the provided disclosures materially incomplete and misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Rather than disclose the information necessary to reconcile these measures, Defendants merely disclose Revenue, a GAAP metric that is insufficient to reconcile the non-GAAP figures.

47. Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

48. Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads CEB stockholders.

49. The Proxy also fails to disclose the following Company projections for years 2017 through 2021: (i) stock-based compensation expense; (iii) interest; (iv) taxes; (v) depreciation and

amortization; (vi) net non-operating foreign currency gain (loss); (vii) change in net working capital; (viii) the historical growth case cited repeatedly in the Proxy; and (ix) the growth rate used by Centerview to extrapolate CEB management's projections from three years to five years. Without these line items, cherry-picking the disclosed projections materially misleads CEB stockholders, particularly where these measures are required to reconcile disclosed non-GAAP projections.

50. Additionally, the Proxy fails to disclose material information concerning Allen, the financial advisor engaged by CEB to run its solicitation process during the go-shop period.

51. The Proxy does not disclose any information regarding Allen's engagement, including but not limited to the fee to be received by Allen in connection with this engagement, and the extent to which such fee was contingent upon the consummation of a merger transaction, and the services Allen has provided to CEB, Gartner, and/or their affiliates in the past two years and the amount of compensation received for such services.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. This omission misleads CEB stockholders as to the motivations facing Allen in pursuing other potential alternative transactions and the effectiveness of the go-shop period.

53. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CEB**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  CEB is liable as the issuer of these statements.

65.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68.     The Proxy is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Gartner

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants and Gartner acted as controlling persons of CEB within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of CEB and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants and Gartner was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy.

75. Gartner also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

76. By virtue of the foregoing, the Individual Defendants and Gartner violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and Gartner had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 7, 2017               Respectfully Submitted,

By: ____/s/ Elizabeth K. Tripodi_____
ELIZABETH K. TRIPODI (VSB #73483)
LEVI & KORSINSKY LLP
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone:   (202) 524-4290
Facsimile:   (202) 333-2121
Email: etripodi@zlk.com